UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
TANYA GILES POWELL,

                Plaintiff,

         -against-

FANNIE MAE,

                Defendant.
------------------------------------------------------X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/2/17
```

**REPORT and RECOMMENDATION**

16-CV-1359 (LTS)(KNF)

KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE LAURA TAYLOR SWAIN, UNITED STATES DISTRICT JUDGE

      Plaintiff Tanya Giles Powell, proceeding pro se, commenced this action by filing a complaint against defendant Fannie Mae, along with a proposed order to show cause seeking an order enjoining the defendant, during the pendency of this action, from permitting flooding and mold to injure her property. The plaintiff alleges that she sustained extensive water and mold damage to her property, located at 3522 Barnes Avenue, Bronx, New York, as the result of flooding at the property adjacent to hers, that is, 3520 Barnes Avenue, Bronx, New York. At the time of the incidents in question, the adjacent property was owned by Fannie Mae, which had taken possession following a foreclosure sale in April 2015. In her request for an order to show cause for a preliminary injunction, the plaintiff states: "My house keeps flooding and mold is growing. I have ast[h]ma and continuously have to move out because of mold[.] I need them to take care of these repairs ASAP." The defendant opposes the request.

## BACKGROUND

      According to the plaintiff, on July 4, 2015, she "noticed mold growing along the right side of the basement [of her property] from front to back." She contacted the realtor for the adjacent property, who agreed to inform Fannie Mae of the problem. The plaintiff then

contacted Fannie Mae directly; a representative of which told her that "someone would be out to look at it." In the interim, the plaintiff was informed by an individual working at the adjacent property that the basement had flooded with "about five feet of water." According to the plaintiff, "four days later all that water came into my basement and cause[ed] major damage." She stated that Fannie Mae "told me to send rec[e]ipts and picture[s] of damages and they would compensate me and they never did." One year later, in July 2016, the plaintiff was advised by an individual working at the adjacent property that a "subpump" had broken and that the basement was filling with water again. As a result, the plaintiff's basement flooded a second time. The plaintiff stated that she was "seeking $100,000 for the damage to my property" caused by the defendant's negligence.

On April 21, 2016, the defendant filed a memorandum of law in opposition to the plaintiff's order to show cause seeking a preliminary injunction, as well as the declaration of its counsel, Christopher P. Keenoy, and, as an exhibit to the declaration, the affidavit of Tim McCallum, the Vice President of Credit Portfolio Management - Real Estate at Fannie Mae ("McCallum Affidavit"). McCallum avers that:

> Plaintiff's Order to Show Cause claims that her basement flooded on February 17, 2016. The basement of FANNIE MAE'S premises flooded as well around this time, and following the incident, FANNIE MAE pumped out the basement of its premises to resolve the issue. . . . Since FANNIE MAE took possession, the premises has been victim to vandalism, break-ins, and thefts. During this time, the generator was stolen (which powered the sump pump), and during a separate incident, the sump pump itself was stolen along with the electric meter. Following these incidents, FANNIE MAE quickly replaced the stolen/damaged items. . . . In sum, despite various obstacles (break-ins, thefts, vandalism, etc.) FANNIE MAE has been attentive in quickly resolving any and all issues that have arisen with the property.

In opposing the plaintiff's application for a preliminary injunction, the defendant argues that, to the extent that the plaintiff seeks an order directing the defendant to resolve issues with

its own property, the request is moot because, as set forth in the McCallum Affidavit, after the defendant took possession of the property, it worked diligently to address all the issues that had arisen, including flooding of the property's basement. On the other hand, according to the defendant, to the extent that the plaintiff seeks an order directing the defendant to deal with issues involving her own property, there has been no showing that any acts or omissions on the part of the defendant were a substantial factor in causing the alleged flooding and mold in the plaintiff's property. Moreover, the defendant argues, such an order must be denied because it would give the plaintiff the ultimate relief she seeks in her complaint.

A show cause hearing was held on April 28, 2016, in which the plaintiff and her husband, along with the defendant's counsel, participated. Thereafter, the plaintiff submitted a reply to the defendant's opposition, as well as exhibits, including photographs of relevant areas of the properties in question and correspondence with the defendant's insurance carrier. In her reply, the plaintiff states that she was "under the impression" that she was going to be compensated for her loss but that "it has been almost one year and [the defendant] still [has] not removed or treated the mold in that house." The plaintiff disputes the defendant's contention that Fannie Mae had been working diligently to resolve any issues, including those concerning the basement. She stated that the defendant's argument that the "ultimate relief I seek is premature" is unfounded and concludes that "[t]hey need to make me whole. Fannie Mae is a government funded agency that should be held responsible for [their] property. . . . I never asked for these problems . . . and my family . . . shouldn't be the ones to suffer."

## DISCUSSION

Legal Standard

Submissions to the court made by pro se litigants are to be construed liberally and interpreted "to raise the strongest arguments that they suggest." Burgos v. Hopkins, 14 F.3d 787,

3

790 (2d Cir. 1994)). At the same time, "pro se status does not exempt a party from compliance with relevant rules of procedural and substantive law." New v. Ashcroft, 293 F. Supp. 2d 256, 257 (E.D.N.Y. 2003) (citation and internal quotation marks omitted).

"It is well established that in this Circuit the standard for an entry of a TRO is the same as for a preliminary injunction." Andino v. Fischer, 555 F. Supp. 2d 418, 419 (S.D.N.Y. 2008) (citations omitted). "Generally, to obtain a preliminary injunction, a party must demonstrate '(1) irreparable harm in the absence of the injunction and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair grounds for litigation and a balance of hardships tipping decidedly in the movant's favor.'" Id. (quoting MyWebGrocer, L.L.C. v. Hometown Info., Inc., 375 F.3d 190, 192 (2d Cir. 2004)).

"The purpose of a preliminary injunction is to preserve the status quo between the parties pending a full hearing on the merits. Preliminary injunctive relief is improper where it would give the plaintiff substantially all the ultimate relief it seeks." Holy Spirit Assn. for the Unification of World Christianity v. Town of New Castle, 480 F. Supp. 1212, 1214 (S.D.N.Y. 1979) (citing Triebwasser & Katz v. American Tel. & Tel. Co., 535 F.2d 1356, 1360 (2d Cir. 1976) ("The injunction granted below would in effect give the plaintiffs substantially the ultimate relief they seek . . . before there has been any trial of the issues and where the district court has not found that there has been a showing of probable success on the merits.")). See also Belmonte v. New York Letter Carriers, 80 Civ. 2865, 1980 WL 2158, at *1 (S.D.N.Y. Oct. 21, 1980) ("Apart from the merits, [plaintiff] has misconstrued the purpose of preliminary injunctive relief, which is 'not to award the movant the ultimate relief sought in the suit but is only to preserve the status quo by preventing during the pendency of the suit the occurrence of that irreparable sort of harm which the movant fears will occur.'")(quoting State of New York v.

Nuclear Reg. Comm'n, 550 F.2d 745, 754 (2d Cir. 1977)).

Application of Legal Standard

In this case, as in those cited above, the plaintiff has misunderstood the purpose of a preliminary injunction. Her request for injunctive relief does not contemplate a stay to preserve the status quo pending a full hearing on the merits of this action but, rather, seeks the ultimate relief, i.e., money damages sufficient to compensate her for her loss and allow her to fix her basement.

Moreover, it does not appear that the plaintiff can meet her obligation to make a clear showing of the threat of irreparable harm insofar as she has acknowledged that she has an adequate and complete remedy at law, that is, as set forth in her complaint, $100,000 for the damage to her property. See Triebwasser & Katz, 535 F.2d at 1359 (a clear showing of the threat of irreparable harm is a fundamental and traditional requirement of all preliminary injunctive relief, since equity cannot intervene where there is an adequate remedy at law) (citations omitted). Therefore, for these reasons, the plaintiff's request for injunctive relief should be denied.

## RECOMMENDATION

For the reasons set forth above, I recommend that the plaintiff's request for a preliminary injunction, Docket Entry No. 3, be denied.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable

Laura Taylor Swain, 500 Pearl Street, Room 1320, New York, New York, 10007, and to the chambers of the undersigned, 40 Centre Street, Room 425, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Swain. ***Failure to file objections within fourteen (14) days will result in a waiver of objections and will preclude appellate review.*** See Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985); Cephas v. Nash, 328 F.3d 98, 107 (2d Cir. 2003).

Dated: New York, New York
      February 2, 2017

Copy mailed to:

Tanya Giles Powell

Respectfully submitted,

*Kevin Nathaniel Fox*
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE